United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KARENNA R LYNN,

Plaintiff,

v.

NTT AMERICA, INC.,

Defendant.

Case No. 25-cv-09844-RS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

Defendant NTT America, Inc. ("NTT") moves to dismiss each claim in this action brought by former NTT employee Karenna Lynn. Lynn asserts twelve causes of action related to retaliation, gender discrimination, hostile work environment, breach of contract, intentional infliction of emotional distress ("IIED"), and failure to pay. For the reasons set forth below, Plaintiff's fourth claim, retaliation for reporting gender discrimination, is dismissed with leave to amend. Defendant's motion as to the remaining claims is denied.[1]

## II. BACKGROUND[2]

Plaintiff worked in sales for NTT, an IT services company, from 2012 to November 2023. Plaintiff alleges that she was a strong performer throughout her time at NTT but that between

---

[1] Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument.

[2] Unless otherwise stated, this order accepts well-pled factual allegations made in the complaint as true.

2021 and 2022, she experienced concerted efforts to thwart her success, discrimination, harassment, and retaliation based on her gender and reporting of misconduct. This mistreatment included work trips hostile to women, being passed over for promotions, reduced commissions, increased sales quotas, lesser title and pay than her comparable peers, and public humiliation.

Then, on November 15, 2023, NTT terminated Plaintiff. On November 14, 2025, Plaintiff filed an administrative charge with the California Civil Rights Department ("CRD") for violations of the California Fair Employment Housing Act ("FEHA") and received a Right-to-Sue Notice the same day. This suit followed.

Plaintiff filed the original complaint on November 17, 2025. Defendant filed a motion to dismiss the original complaint on March 16, 2026, and on April 6, 2026, Plaintiff filed the First Amended Complaint ("FAC"). In it, she asserts twelve causes of action based on whistleblower retaliation, gender discrimination, hostile work environment, and failure to investigate and failure to prevent harassment, discrimination, wrongful termination, breach of contract/breach of implied covenant of good faith and fair dealing, Equal Pay Act violation, and intentional infliction of emotional distress. Defendant now moves to dismiss each for failure to state a claim.

### III. LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief, Fed. R. Civ. P. 8(a), and "giv[ing] the defendant fair notice of what the… claim is and the grounds upon which it rests," *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal quotation marks and citation omitted). When evaluating such a motion, courts "accept all factual allegations in the

United States District Court
Northern District of California

complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

In dismissing a complaint, leave to amend must be granted unless it is clear the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrections,* 66 F.3d 245, 248 (9th Cir.1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir.1996).

<div align="center">

**IV. DISCUSSION**

</div>

**A.  False Claims Act Retaliation**

Plaintiff's first claim for relief alleges that Defendant violated the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). "The FCA imposes significant civil liability on any person who… (A) 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval,' (B) 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,' or (C) 'conspires to commit a violation of [the FCA].' " *Winter ex rel. United States v. Garden Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1114 (9th Cir. 2020) (quoting 31 U.S.C. § 3729(a)(1)).

The FCA contains an anti-retaliation provision which states that "[a]ny employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h). An employee must prove three elements in a FCA retaliation claim: (1) the employee engaged in conduct protected under the statute; (2) the employer knew that the employee engaged in protected conduct; and (3) the employer discriminated against the employee because she engaged in protected conduct." *Mooney v. Fife*, 118 F.4th 1081, 1089 (9th Cir. 2024). Defendant argues that Plaintiff has failed to state a claim for retaliation in violation of the FCA because the complaint does not contain sufficient and plausible factual allegations that (1) Plaintiff

<div style="writing-mode: vertical-rl">United States District Court
Northern District of California</div>

engaged in activity protected under the statute or (2) a connection between her reporting and any adverse employment action. Both Defendant's arguments fail.

When an employee "alleges [s]he was trying to stop a FCA violation," " 'an employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Rako v. VMware LLC*, No. 25-CV-05142-SVK, 2025 WL 3277352, at *4 (N.D. Cal. Nov. 25, 2025) (citing *Mooney v. Fife*, 118 F.4th 1081, 1091 (9th Cir. 2024)).[3] The Ninth Circuit has noted that "this test does not set a high bar." *Id.* at 1092.

Plaintiff alleges that she escalated concerns about NTT bribery of potential government customers which would render fraudulent "certifications that NTT signed attesting that they will not influence or attempt to influence the award of federal funds in this way." Dkt. 24, FAC, ¶ 55. *See also id.* ¶¶ 54, 56, 60, 91. This alleged whistleblowing is sufficient at this stage to establish protected activity under the FCA. *See Los Angeles Cnty., et al. ex rel. Karen Gluck v. Thomas Shepos, et al.*, No. CV 19-1773 PA (MAAX), 2026 WL 796905 (C.D. Cal. Mar. 16, 2026) (No-bribery certifications supplied a sufficient basis for FCA claims at summary judgment stage.).

As for causation, "[i]t suffices at this pleading stage for [Plaintiff] to simply give notice that she believes [NTT] terminated her because of her investigation into the practices she specified in the complaint." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Plaintiff makes these allegations. *See e.g.,* Dkt. 24, FAC, ¶ 1 (alleging Plaintiff was "wrongfully terminated… in retaliation for whistleblowing"); *id.* ¶ 100 (alleging that "[i]mmediately following [her] reporting, NTT retaliated against [Plaintiff] by taking adverse employment actions against her and by discriminating and retaliating against her"). Accordingly, her claim for retaliation under the False Claims Act survives.

---

[3] Defendant inaccurately represents the rule followed by *Rako v. VMware LLC*: "to allege that she was engaged in 'protected activity' under the FCA, Plaintiff must allege she reported that the Company was committing fraud against the government." Dkt. 25, Mot. to Dismiss, at 11 (citing Rako v. VMware LLC, No. 25-CV-05142- SVK, 2025 WL 3277352, at *4 (N.D. Cal. Nov. 25, 2025).

United States District Court
Northern District of California

**B. Retaliation for Reporting Bribery, Misuse of Funds, and Fraud Violative of California Labor Code § 1102.5**

To establish a prima facie case under California Labor Code § 1102.5, "a plaintiff must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." *Patten v. Grant Joint Union High Sch. Dist.,* 134 Cal.App.4th 1378, 1384, 37 Cal.Rptr.3d 113 (2005), *overruled on other grounds by Lawson v. PPG Architectural Finishes, Inc*., 12 Cal. 5th 703, 503 P.3d 659 (2022). Protected activity includes "disclos[ing] information… to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance… if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, … rule[,] or regulation[.]" Cal. Lab. Code § 1102.5(b)–(c). By sufficiently alleging whistleblowing of a bribery-based FCA violation, Plaintiff has satisfied the first prong. For the same reasons that her FCA retaliation claim sufficiently alleged a causal connection between the protected activity and adverse employment action, i.e., termination, the second and third prongs are also sufficiently pleaded at this stage.

**C. Gender Discrimination Under FEHA**

Plaintiff's third claim is for gender discrimination under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940(a). To establish a prima facie case of discrimination under FEHA, Plaintiff must generally show that (1) she was a member of a protected class, (2) she was performing competently in her position, (3) she suffered an adverse employment action, and (4) some other circumstance suggests discriminatory motive. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000). Although this prima facie threshold is an evidentiary standard, not a pleading requirement, *see Austin v. Univ. of Oregon*, 925 F.3d 1133, 1136 (9th Cir. 2019), courts routinely look to these elements to decide whether a plaintiff has stated a plausible claim at the motion to dismiss stage. *See, e.g., Lindsey v. Claremont Middle Sch.*, No. C 12-02639 LB, 2012 WL 5988548, at *2 n.3 (N.D. Cal. Nov. 29, 2012).

Defendant argues without success that Plaintiff's allegations do not establish adverse employment action that is causally connected to her gender. Adverse employment action means

United States District Court
Northern District of California

CASE NO. 25-cv-09844-RS

5

explicit "changes in the terms, conditions, or privileges of employment; that is, changes involving some official action taken by the employer." *Roby v. McKesson Corp.*, 47 Cal.4th 686, 706 (2009) (cleaned up). Official action with respect to the employee often includes "firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action." *Id.* Plaintiff avers adverse employment action by alleging NTT increased her sales quotas but not those of her male counterparts. Dkt. 24, FAC, ¶ 46. "[A]ssigning more, or more burdensome, work responsibilities, is an adverse employment action." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). *See also Sangster v. Hewlett Packard Enter. Co.*, No. 23-CV-05438-HSG, 2024 WL 3408216, at *3 (N.D. Cal. July 11, 2024) (Setting higher sales goals for plaintiff than male colleagues was sufficient for a FEHA discrimination suit.). Plaintiff also alleges she was passed over for jobs in favor of less qualified men and not given the same job title or pay as her male counterparts. Dkt. 24, FAC, ¶¶ 28, 30–35. Plaintiff's allegations may establish other adverse actions, but at this stage these are sufficient.

Plaintiff also pleads other circumstances suggesting discriminatory motive. She alleges gender-hostile work environments on male-dominated sales trips, *id.* ¶ 49, humiliating comments encouraging her to smile more, *id.* ¶ 43, and adverse action against other similarly situated women but not men, *id.* ¶ 51–52. At this stage, that is sufficient.

### D. Retaliation for Reporting Discrimination and Harassment Under FEHA, California Labor Code § 1102.5, and Title VII

Plaintiff must show that her reporting of discrimination and harassment was a protected activity under FEHA and California Labor Code § 1102.5 and is causally related to an adverse employment action. *See Patten,* 134 Cal.App.4th at 1384 (section 1102.5); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (Title VII). Under FEHA, Plaintiff must make the same showing and additionally must demonstrate that "the protected activity was a motivating reason for the adverse action," and "the employer's conduct caused harm to the plaintiff." *Lewis v. City of Benicia*, 169 Cal. Rptr. 3d 794, 808 (Ct. App. 2014).

Plaintiff alleges that after a humiliating meeting in June 2022, she was prevented from hiring to bring her team up to normal staffing levels and she was singled out for an increased sales

quota. She alleges she reported both forms of mistreatment "repeatedly," "directly" and "regularly" to her superiors, including to Charles Honeycutt and Jonathan Sellers. Dkt. 24, FAC, ¶¶ 45–46. She also alleges that she sent an email to NTT superiors Leigh Juul, Honeycutt, and Richard Harper in June 2023 documenting attempts to harm her ability to do her job and sent follow-ups about abusive behavior to other female employees that "was a symptom of a large problem at NTT." *Id.* ¶ 62. In September 2023, Plaintiff escalated complaints about another woman who was singled out for increased sales quotas.

Defendant argues that these allegations are insufficient because it is not clear to whom Plaintiff made each of her alleged reports and because Plaintiff "does not allege that she suggested [in her reports] the 'abusive behavior' was *because of* these employees' genders." Dkt. 25, MTD, at 18. However, in the same sentence that she alleges she was "improperly singled out for increased quotas" and in the same paragraph she alleges she "complained about this conduct to her supervisors directly and regularly," Plaintiff alleges "[n]o similar tactics were taken as to her male coworkers." *Id.* ¶ 46. In other words, "[t]his conduct" that Plaintiff reported encompasses her being singled out compared to her male peers. It is clear in context that Plaintiff's complaints discussed disparate treatment of herself and her female colleagues and included concern about gender discrimination. *See e.g., id.* ¶ 50 (Plaintiff "regularly complained about this conduct and later gender discrimination…including to her direct supervisors.").

However, the allegations do not establish sufficiently that the reporting of gender discrimination was a cause or motivating factor of the adverse employment action. Plaintiff alleges that after she "complained and blew the whistle on illegal activity, she became *persona non grata*." *Id.* ¶ 68. However, in context the reported illegal activity spurring NTT's retaliation is bribery, not gender discrimination. Plaintiff's other allegations of retaliation also fail because they either similarly indicate that the reporting pertained to bribery or they are conclusory. *See e.g., id.* ¶ 88 ("[H]er termination was malicious… in retaliation for her reporting of illegal conduct."); *id.* ¶ 1 (She was "terminated… in retaliation for whistleblowing[.]"); *id.* ¶ 120 ("Lynn's protected activity [of reporting gender discrimination] was a motivating factor for the adverse employment actions."). Because Plaintiff has not alleged sufficiently that her reporting of gender discrimination

CASE NO. 25-cv-09844-RS

was the cause of adverse employment action, Plaintiff's fourth claim for relief fails.

### E. Hostile Work Environment Claim

To establish a claim for harassment under FEHA, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment. *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013). Plaintiff must also file an administrative claim within one year of the events giving rise to the charge if the events took place prior to 2020 and within three years if the events took place after 2020. Cal. Gov't Code § 12960(d) (2018); Cal. Gov't Code § 12960(e) (2020). A hostile work environment is present "when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being." Cal. Gov't Code § 12923(a).

Harassment requires a " 'concerted pattern of harassment of a repeated, routine or a generalized nature,' " *Lawler*, 704 F.3d at 1244 (quoting *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal.4th 121, 87 Cal.Rptr.2d 132, 980 P.2d 846, 851 (1999)), that falls "outside the scope of necessary job performance," *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th. 55, 63 (1996), and "commonly necessary personnel management actions such as hiring and firing," *Reno v. Baird*, 18 Cal. 4th 640, 646–47 (1998) (citations omitted). Rarely, "official employment actions" will constitute harassment and only where they "communicat[e] a hostile message" and are so "severe or pervasive as to alter the working conditions." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 708–9 (2009), *as modified* (Feb. 10, 2010). The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

Defendant argues that Plaintiff's claim is time-barred. A plaintiff must file an administrative claim within one year of the events giving rise to the charge if the events took place prior to 2020 and within three years if the events took place after 2020. Cal. Gov't Code

§ 12960(d) (2018); Cal. Gov't Code § 12960(e) (2020). Here, Plaintiff filed an administrative claim in November 2025; therefore, conduct after November 2022 is actionable.[4] Plaintiff alleges she complained about gender discrimination throughout the later part of her time at NTT between 2018 and 2023, including making a report in March 2023 after being publicly berated by a male coworker. She also alleges that a colleague asked if she believed she was experiencing gender discrimination in August and October 2023, indicating harassing conduct was occurring at that time. In sum, Plaintiff's allegations establish at least some pattern of conduct that is not time-barred.

Defendant also argues that the alleged conduct is not sufficiently severe or pervasive. Plaintiff, however, has alleged that because of her gender, she was singled out for quota increases, she was berated, male colleagues attempted to sabotage her major sales and take over accounts, and client trips created a highly uncomfortable environment. She also alleges that another female colleague, Michelle Campnell, experienced similar treatment around September 2023: e.g., unattainable quotas, berating, exclusion from important business opportunities. This is sufficient to plead a severe and pervasive hostile work environment.

### F. Failure to Prevent Harassment, Discrimination, Retaliation and Wrongful Termination in Violation of Public Policy

Defendant argues that Plaintiff's sixth claim for failure to prevent harassment, discrimination, and retaliation must fail because it is derivative of Plaintiff's FEHA claims. However, as discussed, Plaintiff's gender discrimination FEHA claim survives. So too does her sixth claim.

---

[4] Conduct that was part of a continuing violation per the continuing violation doctrine may also be considered. *See Hoglund v. Sierra Nev. Memorial-Miners Hosp.*, 102 Cal.App.5th 56, 71 (May 17, 2024). The continuing violation inquiry should be made with regard to specific types of conduct and requires a sufficiently similar factual context between the earlier and later conduct as well as reasonable frequency of the conduct. *See Bois v. Levi Strauss & Co.*, No. 23-CV-02772-TLT, 2024 WL 4004980, at *4–5 (N.D. Cal. July 30, 2024). The doctrine does not apply if the conduct had become permanent during the earlier time-barred period. Permanence is reached "when the employee is on notice that further efforts to end the unlawful conduct will be in vain." Richards, 26 Cal. 4th at 823. It is not necessary at this juncture to determine whether the continuing violation doctrine applies to some of Plaintiff's claims. The post-November 2022 conduct is sufficient at this stage.

Defendant similarly argues that Plaintiff's seventh claim for wrongful termination against public policy must fail because Plaintiff has not alleged sufficiently that she was terminated as a result of reporting activity. Although Plaintiff has not shown she was terminated for reporting gender discrimination, she has alleged properly that she was terminated for reporting bribery. Her seventh claim accordingly survives.

### G.  Breach of Contract and Covenant of Good Faith and Fair Dealing

To state a claim for breach of contract, a plaintiff must allege, the "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (Cal. Ct. App. 2008). Every contract also includes an implied covenant of good faith and fair dealing "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (2012) (internal quotation marks omitted). The purpose of the covenant is to "mak[e] effective the agreement's promises." *Id.*

Defendant argues that Plaintiff has not identified any contract, let alone one that bars NTT from interfering with or reassigning Plaintiff's clients and deals, revising her quotas, and terminating her employment in bad faith and without good cause or that requires NTT timely allocate equity distributions. However, both Defendant and Plaintiff agree that Plaintiff was at least employed at-will by NTT, meaning they do not dispute the existence of an employment agreement. Moreover, Plaintiff specifically discusses an employment agreement entered into when she accepted the new Area Sales Director, Public Sector position in November 2012.

Plaintiff does not identify specific provisions regarding obligations reflected in that offer letter or other employment agreements in place prohibiting NTT from reassigning Plaintiff's clients, revising her quotas, or failing to distribute equity. However, breach of the implied covenant of good faith and fair dealing is pleaded sufficiently without more contractual details. Plaintiff alleges NTT was frustrating her ability to perform her job and terminated her in retaliation for reporting illegal activity, both of which establish a claim for breach of the implied

United States District Court
Northern District of California

covenant of good faith and fair dealing in an employment agreement.

### H.  Equal Pay Act

The California Equal Pay Act provides that no employer shall discriminate by paying different wages to employees of opposite sexes within an establishment for jobs that require substantially equal skill, effort, and responsibility, and which are performed under similar working conditions. *Green v. Par Pools Inc*., 111 Cal. App. 4th 620, 623 (2003) (citing Cal. Lab. Code § 1197.5) (The California Equal Pay Act is nearly identical to the federal statute and subject to the same analysis.); 29 U.S.C. § 206(d)(1) (federal Equal Pay Act standard); *E.E.O.C. v. Maricopa Cty. Cmty. Coll. Dist*., 736 F.2d 510, 513 (9th Cir. 1984) (federal Equal Pay Act standard). Defendant argues that Plaintiff's ninth claim based on violations of the California Equal Pay Act fail because Plaintiff has not alleged adequately that her job and those of her higher-paid male coworkers Jason Green, Joey Paul, and Jess Kwiatkowski required the same duties and skill. However, Defendant admits that, "[a]s to all three men, Plaintiff alleges… that they were 'responsible for the same job responsibilities as [Plaintiff], with the same team on the same scale, but for different geographical areas.' " Dkt. 25, Mot. to Dismiss, at 24 (quoting Dkt. 24, FAC, ¶ 32). At this stage, that is sufficient.

### I.  Retaliation for Disclosing Workplace Misconduct

Plaintiff's tenth claim is for retaliation for disclosing workplace misconduct in violation of California Labor Code § 232.5. Under Section 232.5(c), "[n]o employer may ... [d]ischarge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions." Although the statute does not define "working conditions," Defendant argues it does not include the gifts to public officials and efforts to quash her contracts that Plaintiff alleges she reported. Plaintiff, however, has described working conditions: she alleges tacit acceptance of bribery, reporting fraud, and gender discrimination was a requirement to keep her job. This claim survives.

### J.  Intentional Infliction of Emotional Distress

Plaintiff's eleventh claim is for intentional infliction of emotional distress in violation of

United States District Court
Northern District of California

CASE No. 25-cv-09844-RS

California Civil Code (§) 3294. To establish an IIED claim in California, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)). "Extreme and outrageous conduct" means conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community," and it must be "intended to inflict injury or engaged in with the realization that injury will result." *Potter*, 6 Cal. 4th at 1001. Defendant challenges Plaintiff's IIED claim on two grounds: any IIED claim against NTT is barred by the California Workers' Compensation Act ("WCA") and Plaintiff does not state sufficient facts to show NTT engaged in "extreme and outrageous conduct."

WCA provides the exclusive remedy for injuries sustained in connection with "actions that are a normal part of the employment relationship." *Singh v. Southland Stone, U.S.A., Inc.,* 186 Cal.App.4th 338, 367 (2010) (*citing Cole v. Fair Oaks Fire Protection District,* 43 Cal.3d 148, 160, 233 Cal.Rptr. 308, 729 P.2d 743 (1987)). These actions include "demotions, promotions, [and] criticism of work practices," *Cole,* 43 Cal.3d at 160, and do not exclude even actions that are "manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance," *Singh*, 186 Cal.App.4th at 367 (internal quotation marks and citation omitted). However, WCA exclusivity does not apply when the conduct contravenes public policy. *See Gibbs v. American Airlines*, 74 Cal.App.4th 1, 10 (1999); *Gantt v. Sentry Insurance*, 1 Cal.App.4th 1083, 1085 (1992). The California Court of Appeal has explained that plaintiffs may pursue their claims "where the conduct at issue violates FEHA and also satisfies the elements of the [IIED] claim," because such "unlawful discrimination and retaliation in violation of FEHA falls outside the compensation bargain," and therefore outside the ambit of "worker's compensation exclusivity." *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017). *See also Miller v. Walmart Inc.*, No. 22-CV-03878-RS, 2022 WL 4287161, at *4 (N.D. Cal. Sept. 16, 2022). Here, Plaintiff has pled successfully violations of FEHA. Accordingly, WCA exclusivity does not apply to the

conduct underlying those claims.

As to Defendant's second argument, that Plaintiff has not alleged extreme and outrageous conduct, under California law properly pled allegations of discrimination, harassment, and retaliation based on protected class can satisfy the elements of IIED. *See e.g., Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 618 (Ct. App. 1989) ("[I]f properly pled, sexual harassment will constitute the outrageous behavior element of a cause of action for intentional infliction of emotional distress."); *Wason v. Am. Int'l Grp.*, Inc., No. 09CV2752-LAB CAB, 2010 WL 1881067, at *8 (S.D. Cal. May 6, 2010) (Allegations of supervisor's interference with receipt of disability benefits was sufficient to establish supervisor, against whom IIED and NIED claims were brought, was not a sham defendant.). Plaintiff has properly pled discrimination, harassment, and retaliation as discussed. Specifically, she alleges she was subject to "bullying, strong-arming, and harassing," Dkt. 24, FAC, ¶ 63, "publicly berated," *id.* ¶ 50, and sales environments that "led to unwanted sexual comments and attention form customers," *id.* ¶ 49. In sum, Plaintiff has pled a claim for IIED.

### K. Failure to Pay Earned Wages

Plaintiff's final claim is based on failure to pay earned wages under California Labor Code § 201, 203. Section 201 provides for immediate payment of earned and unpaid wages at the time of discharge, and Section 203 authorizes recovery of up to 30 days of wages "as a penalty" where an employer willfully fails to pay wages when an employee is discharged or resigns. Cal. Lab. Code §§ 201(a), 203(a).

Defendant argues that Plaintiff's claim must fail because she has not alleged her stock shares were vested, earned, or payable at the time of separation. Plaintiff alleges she "was entitled to equity in NTT in the amount of 26,000 shares of stock, with quarterly dividends," compensation which was "standard to employees of Lynn's position in NTT" and was "timely paid to [her] male counterparts," but which she was not paid. Dkt. 24, FAC, ¶ 180.

Whether Plaintiff is correct that she was entitled to the equity or Defendant is correct that she was not, the issue is "disputed" just as Defendant admits, Dkt. 25, Mot. to Dismiss, at 27, and thus better resolved at the summary judgement stage. At this stage, Plaintiff's "[a]llegations that

[her] employer failed to pay earned wages owed at separation are sufficient to place [NTT] on notice of the claim[.]" *See Iravanian v. TransPerfect Translations Int'l, Inc.*, No. 22-CV-09157-JST, 2026 WL 747458, at *8  (N.D. Cal. Mar. 17, 2026), *opinion vacated in part on reconsideration sub nom. HANIEH IRAVANIAN, Plaintiff, v. TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC., Defendant.*, No. 22-CV-09157-JST, 2026 WL 1486575 (N.D. Cal. May 27, 2026) (citing *Bruno v. U.S. Renal Care, Inc.*, No. 21-cv-04617-FLA-MRW, 2022 WL 2439525, at *4–5 (C.D. Cal. July 5, 2022) (rejecting argument that plaintiff was required to plead dates of termination, amounts of final paycheck, or specific unpaid sums); *Bernstein v. Vocus, Inc.*, No. 14-CV-01561-TEH, 2014 WL 3673307, at *5 (N.D. Cal. July 23, 2014) ("Plaintiff's allegations that Defendants failed to pay him salary, bonus, and stock is sufficient to state a claim under Labor Code section 203.")). Plaintiff's twelfth claim survives.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part. Plaintiff's fourth claim for retaliation for reporting gender discrimination is dismissed with leave to amend. Defendant's motion is denied as to the rest of Plaintiff's claims.

**IT IS SO ORDERED**.

Dated: June 2, 2026

_____
RICHARD SEEBORG
Chief United States District Judge